The TEMPLE BUILDING et al., Appellants,

v.

BUILDING CODE BOARD OF APPEALS OF the CITY OF KANSAS CITY, Missouri, Respondent.

No. KCD 29365.

Missouri Court of Appeals, Kansas City District.

May 1, 1978.

Motion for Rehearing and/or Transfer Denied June 12, 1978.

Application to Transfer Denied July 24, 1978.

Rodger J. Walsh, Kansas City, for appellants.

Aaron A. Wilson, City Atty., Edward L. Wurdack, Asst. City Atty., Kansas City, for respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

TURNAGE, Judge.

The City of Kansas City issued an order to the Temple Building to equip its passenger elevators with an interlock system. Temple appealed to the Building Code Board of Appeals of the City and on affirmance of the order there appealed to the circuit court. That court affirmed and Temple appeals.

Temple contends the order to equip its elevators was not supported by competent evidence, the ordinance is vague and unenforceable, the ordinance cannot be applied to existing buildings and elevators and § 292.050, RSMo 1969, has preempted elevator safety within state law to the exclusion of a city ordinance. Affirmed.

The City notified Temple on May 17, 1973, that Temple was required to provide all hoistway doors of passenger elevators numbers 1, 2 and 3, with Code approved interlocks or other devices permitted by the elevator code. The notice gave Temple one year within which to accomplish the work. When such work was not accomplished within one year the City gave Temple another notice on April 26, 1974, requiring the work to be done. In response to this order, Temple filed an appeal with the Building Code Board of Appeals of Kansas City.

A hearing was held before the Board. Temple did not present any evidence but was represented by counsel who made a statement and cross-examined the City's witness. The City presented the testimony of Harold Anderson, supervisor of electrical and elevator inspections. Mr. Anderson stated he had inspected the elevators at the Temple Building. He found both the elevators and the doors were old and worn and unsafe. Mr. Anderson stated there were doors on each floor of the building which were opened and closed by an operator inside the elevator to give access to the elevator. These doors operated on rails and opened from the center so that each door had two panels which met at the center when closed. Mr. Anderson stated these doors were designed to be secured by an arm which went across both panels and

when in the horizontal position would firmly lock the doors to keep them from being opened from the hallway. He stated if a door were opened from the hallway and the elevator was not at that floor then a person could fall into the elevator shaft. He stated an accident had happened a few years prior at the Empire Theatre when a young man opened an elevator door and fell into the shaft to his death.

Mr. Anderson stated the doors in the Temple Building did not operate properly because the horizontal arm did not go in a complete horizontal position which left the doors slightly open. He stated in this position a person with the strength of a teenager could use a simple tool and pry the doors open. He further stated the doors in the basement could be opened by simply pushing on the panels without the use of any tool. Mr. Anderson stated the ordinance required elevators to be equipped with an interlock system which would lock the doors on each floor and if for any reason a door were not locked, the elevator would not operate. He stated the doors equipped with this interlock could only be opened with a special key. By use of this system, the doors could not be opened without the special key and the elevator would not operate unless each door was closed and locked. In this way when the elevators were operating it would be certain the doors were locked and secure so that persons would not be able to open the doors and thus suffer the likelihood of falling into an open shaft.

Counsel for Temple told the Board the cost of installing the interlock system would be about $15,000. Mr. Anderson in his testimony agreed this figure was reasonable.

The Board entered findings of fact and conclusions of law in which it affirmed the order requiring Temple to install the elevator interlock system. On appeal to the circuit court no additional evidence was presented and the court entered an order affirming the decision of the Board.

■ On this appeal Temple contends the order of the Board is not supported by competent and substantial evidence. From the statement of facts set out above, it is apparent the Board had before it evidence that the elevators in the Temple Building were old and unsafe because the doors did not close completely and could be opened very easily with the use of a simple tool by any person with the strength of a teenager. The Board further had before it evidence of a reality of the danger of this situation in the incident which had occurred at the Empire Theatre. Temple does not elaborate on its contention the evidence was insufficient except to state the present system operates as well as the required interlock system would work. It must be remembered Temple did not see fit to present any evidence to the Board. There was no evidence before the Board to refute the evidence produced by the City to show the elevators in their present condition constituted a threat to the public safety. There was ample basis for the Board's findings.

■ Temple argues the ordinance is vague and is not understandable by people of common understanding and knowledge and, therefore, void. On this appeal Temple bears the burden of proof " 'to show by clear and satisfactory evidence that the order is unreasonable or unlawful.' " *Marshfield Community Bank v. State Banking Board*, 496 S.W.2d 17, 28[27, 28] (Mo.App. 1973). Temple has not made the ordinance which it contends to be vague a part of this record and thus the ordinance is not before this court. On this record Temple has failed to sustain its burden to bring forth clear and satisfactory evidence to show the vagueness of the ordinance.

■ Temple pitches its main argument on the theory the City is not permitted to require an existing building to modify its elevator system to provide interlocks. This argument has been refuted in Missouri on the general principle that such an order is within the police power of the City. *Bellerive Inv. Co. v. Kansas City*, 321 Mo. 969, 13 S.W.2d 628, 637[7–9] (1929). There the court held an ordinance preventing the storing of automobiles in certain existing structures was referable to the police power of

the municipality and as such could affect existing structures. The court stated the ordinance would have to be wholly unreasonable and arbitrary in its effect and application before it would be nullified.

The precise question as to requiring existing elevators to be provided with an interlock system was decided in *Abbate Bros., Inc. v. City of Chicago*, 11 Ill.2d 337, 142 N.E.2d 691 (1957). There the court considered an ordinance adopted by the City of Chicago which required existing elevators to be equipped with an interlock system very similar to the system required in this case. The court stated "the general rule appears to be that while regulations restricting the use of property do not ordinarily have retroactive effect, municipal corporations in the exercise of their police power may, within reasonable bounds, enact ordinances or regulations having such effect." 142 N.E.2d 694[3].

Temple's counsel informed the Board it would cost $15,000 to equip its elevators with an interlock system. However, no testimony was presented beyond this bare figure which would demonstrate this requirement was unreasonable. The evidence shows the Temple Building is a 13-story office building in downtown Kansas City. Temple did not present any evidence from which it could be concluded the cost of installing the interlock system was unreasonable. Certainly the installation of the system is designed to protect the general public and falls within the police power of the municipality. Absent evidence to show the ordinance to be wholly unreasonable and arbitrary in its effect and application, it must be held valid.

Temple contends § 292.050 has preempted the field of elevator safety to the State and excludes municipal regulations. It should first be noted this section is only for the protection of the employees in the building where the elevator is located. *Behre v. Hemp & Co.*, 191 S.W. 1038 (Mo. App.1917). Of greater import is the fact the State has delegated to the City of Kansas City the power to make reasonable regulations for the health and safety of the

general public. Mo.Const. art. 6, § 19; *Marshall v. Kansas City*, 355 S.W.2d 877 (Mo. banc 1962). This ordinance falls within the police power granted to the City.

Temple makes some contention the ordinance is not properly adopted because the elevator regulations are contained in a uniform code book. Again, there is nothing in the record which permits review of this contention.

The judgment is affirmed.

All concur.